UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

THE TRAVELERS INDEMNITY
COMPANY OF AMERICA and
THE STANDARD FIRE INSURANCE
COMPANY,

    Plaintiffs,

v.

REZA DAVACHI,

    Defendant.

Civil Action No. TDC-15-0578

## MEMORANDUM OPINION

This insurance coverage dispute is before the Court on a Motion for Default Judgment filed by Plaintiffs Travelers Indemnity Company of America ("TICA") and Standard Fire Insurance Company ("Standard") (collectively, "Travelers"). ECF No. 11. Having reviewed the pleadings and submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the following reasons, the Motion for Default Judgment is GRANTED.

## BACKGROUND

On January 30, 2015, the United States filed *United States v. $442,992.97 in U.S. Currency Seized from Wells Fargo Account No. 1838647582, et al.* in the United States District Court for the Western District of Missouri, an *in rem* action seeking, in relevant part, civil forfeiture of various items of property seized from Defendant Reza Davachi pursuant to a criminal investigation into his alleged involvement in a software counterfeiting scheme. The seized property included the contents of two bank accounts, a vehicle, and numerous coins. On February 5, 2015, the Government sent Davachi information about how to file a claim to the

seized property. Davachi ultimately filed a claim on September 22, 2015. *See United States v. $442,992.97 in U.S. Currency Seized from Wells Fargo Account No. 1838647582, et al.*, Civ. Action No. 15-0079-CV-W-DGK (W.D. Mo), ECF No. 78.[1] Those forfeiture proceedings are ongoing.

At the time that Davachi's property was seized, he had two insurance policies relevant to this action. The first was a homeowners policy issued by Standard to Davachi and his wife for their Damascus, Maryland home. That policy provides that if a suit is brought "against any insured for damages because of bodily injury, personal injury or property damage caused by an occurrence to which this coverage applies," Standard will provide a defense to that suit at its expense. Mot. Sum. J. Ex. 1 at 12, ECF No. 6-2.[2] The second was a personal liability umbrella policy issued by TICA for Davachi and his wife. That policy provides that TICA will "defend an 'insured' if sued as a result of an 'occurrence' covered by this policy," such as an event that "results in 'personal injury.'" *Id.* Ex. 2 at 11, ECF No. 6-3. Both policies define "personal injury" to include injuries caused by "[i]nvasion of privacy." *Id.* Ex. 1 at 7; Ex. 2 at 11.

In a February 11, 2015 letter, Davachi requested that Travelers provide him with a legal defense relating to his claim seeking the return of the seized property, which asserted that the seizure was an invasion of privacy that constituted a personal injury under the terms of the policies. On March 2, 2015, Travelers informed Davachi that it believed it had no obligation to defend him in the forfeiture action under either his homeowners or umbrella policy. That same day, Travelers filed a Complaint for Declaratory Relief in this Court seeking a declaration that it had no obligation to defend Davachi in the forfeiture proceedings. On March 26, 2015,

---

[1] The Court takes judicial notice of court proceedings pursuant to Fed. R. Evid. 201(b)(2).

[2] Citations to exhibit page numbers are to the page numbers assigned by the Court's CM/ECF filing system.

2

Travelers filed a Motion for Summary Judgment. Davachi was served with the Complaint and the Motion for Summary Judgment on April 21, 2015. Davachi failed to file a responsive pleading or otherwise defend against the Complaint by the respective deadline, nor did he file a response to the Motion for Summary Judgment. On June 3, 2015, Travelers filed a Motion for Clerk's Entry of Default, and that default was entered the next day. On June 9, 2015, Travelers filed a Motion for Entry of Default Declaratory Judgment. To date, Davachi has not responded to the entry of default or the Motion for Default Judgment.

## DISCUSSION

### I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Under Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005); *see H. F. Livermore Corp. v.*

*Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

Here, Plaintiffs do not seek money damages, but instead seek declaratory relief pursuant to 28 U.S.C. § 2201, which provides federal courts with the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (2012). "[A] federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (internal quotation marks and citation omitted). Here, both of these requirements are satisfied. The declaratory relief that Travelers seeks would clarify its legal obligations and, in so doing, would terminate the uncertainty surrounding the scope of insurance coverage due to Davachi. Travelers is therefore entitled under 28 U.S.C. § 2201 to a declaration of its legal obligations under the insurance policies at issue.

In determining whether Travelers is entitled to a default declaratory judgment, the Court accepts as true the well-pleaded factual allegations in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). However, it remains for the court to determine whether these unchallenged factual allegations are sufficient to entitle Travelers to the declarative relief it suggests, since a defendant in default "is not held ... to admit conclusions of law." *Id.* at 780; *see also* 10A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2688 (3d ed.

4

Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

## II. Choice of Law

A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *See Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418 (4th Cir. 2004). This Court thus applies Maryland choice-of-law rules. Maryland follows the principle of *lex loci contractus* to resolve disputes about the scope of an insurance contract. That principle dictates that a court apply the law of the jurisdiction where the contract was made. *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). A contract is made where "the last act is performed which makes the agreement a binding contract." *Sting Sec., Inc. v. First Mercury Syndicate, Inc.*, 791 F. Supp. 555, 558 (D. Md. 1992). In the insurance context, this is "[t]ypically ... where the policy is delivered and the premiums are paid." *Id.*; *see Sun Ins. Office, Ltd., of London v. Mallick*, 153 A. 35, 40 (Md. 1931) (determining that because an insurance policy was delivered to a Maryland business and premiums were paid in Maryland, the policy was "a Maryland contract"). Here, Davachi received the policies at his Maryland home. He was also billed for those policies at that same address. Thus while there is no information in the record establishing where Davachi paid his premiums, one can reasonably infer that he did so in Maryland. *See Sting Sec., Inc.*, 791 F. Supp. at 558. The Court therefore applies Maryland law.

## III. Declaratory Judgment

In Maryland, an insurance company has a duty to defend an insured in a lawsuit only if "the allegations [in the suit are] sufficient to indicate a possibility that the claim in question [is]

5

covered by the terms of the policy." *Springer v. Erie Ins. Exch.*, 94 A.3d 75, 90 (Md. 2014) (internal quotation marks and citation omitted). Because an insurance policy is a contract, to determine whether a claim is covered by the terms of the policy, a court should interpret the policy according to "the usual principles of contract interpretation." *Agency Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 998 A.2d 936, 940 (Md. Ct. Spec. App. 2009). Those principles dictate that the court look first and foremost to the language of the policy itself, according the words used their "usual, ordinary, and accepted meaning unless there is evidence that the parties intended ... a special or technical sense." *Id.* (quoting *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 393 (Md. 2006)). Under this standard, Travelers has no obligation to defend Davachi in the pending forfeiture action.

As indicated by the caption of the forfeiture action—*United States v. $442,992.97 in U.S. Currency Seized from Wells Fargo Account No. 1838647582, et al.*—that suit is brought against the seized property, not against Davachi *See* 18 U.S.C § 983(a)(ii) (noting that a civil judicial forfeiture action is a proceeding "against the property"). The forfeiture action therefore does not trigger Travelers' obligation to defend. The plain language of the homeowners policy requires Standard to defend only if suit is brought "against any insured." Mot. Sum J. Ex. 1 at 12. The umbrella policy, in similarly clear language, requires that TICA provide a defense only if "an insured" is "sued." *Id.* Ex. 2 at 11. Here, Davachi is not a defendant in the forfeiture action, but is instead a claimant seeking to recover the seized property. To require Travelers to bear the litigation costs of the forfeiture action would amount to compelling Travelers to pursue an affirmative claim on Davachi's behalf, a litigation posture that is directly at odds with the language of the policies. *Cf.* 1 Allan D. Windt, Insurance Claims and Disputes § 4:41 (6th ed. 2015) ("An insurer, being obligated only to defend claims brought 'against' the insured, is not

required to bear the cost of prosecuting a counterclaim on behalf of the insured."). Under the clear and unambiguous language of both the homeowners and umbrella policies, Travelers is not required to provide Davachi a legal "defense" in the forfeiture action.

The insurance policy language limiting the obligation to defend to proceedings in which the insured was sued is enough to resolve this case. However, the Court touches briefly on two other, related aspects of the policy language, both of which underscore this determination. First, contrary to Davachi's contention, the forfeiture action is not a suit involving personal injury as that term is defined in the policies. The policies provide coverage for personal injury claims made "*against* any insured for damages because of ... personal injury," not personal injuries that Davachi himself may have suffered. Mot. Sum. J. Ex. 1 at 12 (emphasis added). *Cf. Bailer v. Erie Ins. Exch.*, 687 A.2d 1375, 1380-81 (Md. 1997) (discussing whether an invasion of privacy was a personal injury for purposes of insurance coverage when the policyholder invaded the privacy of someone else, not when the policyholder's privacy was invaded). Second, the homeowners policy expressly limits the obligation to defend to suits for damages. Damages are "money paid to make good an insured loss," or, more pointedly, "anything that a third party can make you pay for because of damage to that third party's property." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1032-33 (Md. 1992). Here, the Government seeks forfeiture of seized property; it does not seek any sort of monetary compensation from Davachi for damages he may have caused to that, or any other, property. These provisions, read alongside the unambiguous provisions providing that the insurer has an obligation to defend only when the insured is sued, necessitate the conclusion that Travelers has no obligation to defend Davachi in the pending forfeiture action.

## CONCLUSION

For the foregoing reasons, Travelers' Motion for Default Judgment is GRANTED. The Court will issue a declaratory judgment that Travelers has no obligation to defend Davachi in the pending forfeiture action. A separate Order shall issue.

Date:  February 4, 2016

THEODORE D. CHUANG
United States District Judge